**FILED
CLERK**

**7/6/2026**

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------------X

DK GENTILE & COMPANY INC.  d/b/a
COLLISIONS AWARNESS PRODUCTS,

  *Plaintiff*,

  -against-

GLOBAL INDUSTRIAL DISTRIBUTION INC.
and GLOBAL EQUIPMENT COMPANY INC.,

  *Defendants*.

------------------------------------------------------------------X

**MEMORANDUM
AND ORDER**

2:25-CV-6810 (NJC) (JMW)

**A P P E A R A N C E S:**

Timothy Chorba
Adam M. Levy
**Levy Goldenberg LLP**
75 Board Street, Suite 2120
New York, NY 10004
*Attorneys for Plaintiff*

Steven Carlson
**Robins Kaplan LLP**
555 Twin Dolphin Drive, Suite 310
Redwood City, CA 94065

Timothy Purdon
**Robins Kaplan LLP**
107 West Divide Avenue, Suite 200
Bismarck, ND 58503

Gabriel Altman
**Robins Kaplan LLP**
1325 6th Ave, Suite 2601
New York, NY 10019

  -and-

Tommy Du
**Robins Kaplan LLP**
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067
*Attorneys for Defendants*

**WICKS**, Magistrate Judge:

DK Gentile & Company Inc. *doing business as* Collision Awareness Products ("Plaintiff"), brings this action against Global Industrial Distribution Inc. and Global Equipment Company Inc. ("Defendants" or "Global") for: (i) breach of contract and breach of the implied covenant of good faith and fair dealing; (ii) false designation of origin, false advertising, and unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (iii) unfair competition under New York State Common Law and General Business Law § 349; (iv) misappropriation of trade secrets under New York Common Law; (v) fraud; and (vi) unjust enrichment/*quantum meruit*.  (*See generally* ECF Nos. 1, 22.)  Presently before the Court is Defendants' motion to stay discovery pending Defendants' motion to dismiss. (ECF No. 21.)

For the reasons stated below, the motion is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

### I.      *Summary of the Amended Complaint*

The following allegations are drawn from the Amended Complaint (ECF No. 22; "Am. Compl.") and are assumed true only for purposes of this motion.

Plaintiff, a manufacturer of traffic alerts and forklift sensors, started selling its "best-selling products" "Look Out 3 Rack" and "Look Out 4" around 2009-2010.  (Am. Compl. ¶¶ 10–11.)  Around 2015, Plaintiff began its relationship with Defendants to market and sell said products through physical and online channels, and the parties entered into the "Vendor Agreement."  (*Id.* at ¶¶ 14–15.)  Roughly in 2020 Defendants solicited Plaintiff to participate in

the "Global Equipment's MDF Marketing Program and Agreement," ("MDF Marketing Program" or "Marketing Agreement") in which Defendants claimed they would strengthen their website's search engine to optimize sale of Plaintiff's products. (*Id.* at ¶ 16.) Plaintiff agreed and started paying an annual advertising fee as set forth in the agreement starting in the year 2021, under the representation that all the fees would be used to support Plaintiff's sales. (*Id.* at ¶¶ 18–22.) At their renewal for 2023, Defendants also requested that Plaintiff begin "training" Defendants' sales teams on particular products, all with the promise that this information would be used to increase Plaintiff's sales and promote its products. (*Id.* at ¶¶ 25–31.) For the training, Defendants solicited and induced Plaintiff to provide to Defendants proprietary competitive information. (*Id.* at ¶ 26.) Defendants charged Plaintiff a fee of $8,000 for Plaintiff to train Defendants' sales teams. (*Id.* at ¶ 31.)

Defendants took this information and misused it to "develop, fund and promote the sales of its own unauthorized, reproduction copycat products manufactured and sold by Defendants under [their] own brand name and/or other brand names with which Defendants are affiliated." (*Id.* at ¶ 32.) Around 2024, Defendants began manufacturing and selling two products that Plaintiff considers "blatant duplications" of Plaintiff's products. (*Id.* at ¶ 35.) Defendants sold these products on the same website used to market Plaintiff's products—but at a 12% lower price with lower shipping costs. (*Id.* at ¶¶ 39–40, 43–44.)

After Defendants introduced these products, Plaintiffs' average quarterly sales dropped from $171,928 to $8,086. (*Id.* at ¶ 37.)

On March 19, 2025, Plaintiff sent a notice to Defendants, informing Defendants that Plaintiff was disputing an invoice for the MDF Marketing Program, because "Defendants were improperly using Plaintiff's advertising dollars to attract customers to the [w]ebsite, only to

3

switch them to the Defendants' branded look[-]alike products at a lower selling price[]." (*Id.* at ¶ 46.)  On July 29, 2025, Plaintiff provided notice that it was terminating the Vendor Agreement. (*Id.* at ¶ 48.)  In August 15, 2025, Plaintiff sent a letter demanding that Defendants discontinue sales of the offending products, but Defendants did not comply.  (*Id.* at ¶¶ 49–50.)

## II.    *Procedural Background*

Plaintiff commenced this action on December 11, 2025 asserting claims for, *inter alia*, breach of the implied covenant of good faith and fair dealing, fraud, misappropriation of trade secrets, and violations of the Lanham Act.  (ECF No. 1.)

On March 27, 2026, Defendants filed a letter motion for a pre-motion conference in anticipation of their motion to dismiss.  (ECF No. 11.)  Judge Choudhury waived the pre-motion conference requirement and entered a briefing schedule.  (Electronic Order dated March 30, 2026.)

On April 17, 2026, an initial conference was held and a scheduling order entered.  (*See* ECF No. 16.)

On April 20, 2026, Defendants served their opening motion-to-dismiss brief upon Plaintiff, but they did not file it on the docket pursuant to Judge Choudhury's bundling rule.  (*See* ECF No. 17.)

On April 24, 2026, Defendants filed the instant motion to stay discovery.  (ECF No. 21.)

On May 11, 2026, Plaintiff filed the operative Amended Complaint.  (ECF No. 22.)

On May 18, 2026, Plaintiff filed its opposition to Defendants' motion to stay.  (ECF. No. 24.)

On May 20, 2026, Defendants filed a letter motion for a pre-motion conference in anticipation of their motion to dismiss the Amended Complaint (ECF No. 25), and on May 22, 2026, they filed their reply in further support of their motion to stay (ECF No. 26).

4

On June 4, 2026, Plaintiff filed its opposition letter to Defendants' pre-motion letter on their anticipated motion to dismiss the Amended Complaint.  (ECF No. 27.)

## THE LEGAL FRAMEWORK

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'"  *L.N.K. International, Inc. v. Continental Casualty Company*, No. 22-cv-05184 (GRB) (JMW), 2023 WL 2614211, at *1 (E.D.N.Y. Mar. 23, 2023) (quoting *Thomas v. N.Y. City Dep't of Educ.*, No. 09-CV-5167, 2010 WL 3709923, at *2 (E.D.N.Y. Sept. 14, 2010)) (citation omitted).  The mere filing of a dispositive motion, in and of itself, does not automatically warrant a stay of discovery.  *Gagliano v. United States*, No. 24-cv-07930 (SJB) (JMW), 2025 WL 1104042, at *2 (E.D.N.Y. Apr. 14, 2025) (citing *Weitzner v. Sciton, Inc.*, No. CV 2005-2533, 2006 WL 3827422, at *1 (E.D.N.Y. Dec. 27, 2006)).  Rather, a stay of discovery is warranted only upon a showing of "good cause[.]"  *Alloway v. Bowlero Corp.*, No. 2:24-CV-04738 (SJB) (JMW), 2025 WL 1220185, at *1 (E.D.N.Y. Apr. 28, 2025) (citing *Hearn v. United States*, No. 17-CV-3703, 2018 WL 1796549, at *2 (E.D.N.Y. Apr. 16, 2018)).

Discovery should be stayed "only when there are no factual issues in need of further immediate exploration, and the issues before the Court are purely questions of law that are potentially dispositive[.]"  *Hachette Distribution, Inc. v. Hudson Cnty. News Co.*, 136 F.R.D. 356, 358 (E.D.N.Y. 1991) (Spatt, J.).  The overarching goal is "to secure the just, speedy, and inexpensive determination of every action[.]'"  *Id.* at 357 (quoting Fed. R. Civ. P. 1).  To illustrate, suppose a case involves multiple defendants, but only some made dispositive motions.  That would cut against granting a stay, because "discovery [would] proceed in the case whether or not the [dispositive] motion [were] granted."  *Id.* at 359.  Along the same lines, courts should aim to minimize redundancy.  Sometimes staying discovery may "help prevent duplicative and

inefficient litigation[,]" *Drop a Piano Prods., LLC v. Maraboyina*, No. 25 CIV. 8631 (JPC), 2026 WL 473268, at *1 (S.D.N.Y. Feb. 19, 2026), whereas other times it can have the opposite effect and "unnecessarily lead to duplicative document production and depositions[,]" *Hachette Distribution*, 136 F.R.D. at 359. *Au fond*, "[a] court determining whether to grant a stay of discovery pending a motion must look to the 'particular circumstances and posture of each case.'" *Sharma v. Open Door NY Home Care Servs., Inc.*, 345 F.R.D. 565, 568 (E.D.N.Y. 2024) (quoting *Hachette Distribution*, 136 F.R.D. at 358).

That said, some guidelines are well established. In evaluating whether a stay of discovery is justified, courts typically consider "(1) whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay." *Castillo v. Seviroli Foods, Inc.*, No. 21-CV-0005-ERK-JMW, 2021 WL 5416625, at *1 (E.D.N.Y. Nov. 19, 2021) (applying the "three-factor test" to a motion to stay discovery pending the resolution of a motion to dismiss); *Yzryahl v. Figuccio*, No. 2:25-CV-00474 (SJB) (JMW), 2025 WL 1149474, at *2 (E.D.N.Y. Apr. 17, 2025) (same). "While various district courts debate which of the three factors is the most important, 'there can be little doubt that simplification of the issues and prejudice to the opposing party are more important than the case's state of completion.'" *Palladino v. JPMorgan Chase & Co.*, 345 F.R.D. 270, 273 (E.D.N.Y.) (quoting *OV Loop, Inc. v. Mastercard Inc.*, No. 23-CV-1773 (CS), 2023 WL 7905690, at *2 (S.D.N.Y. Nov. 16, 2023), *aff'd*, 730 F. Supp. 3d 4 (E.D.N.Y. 2024)).

Having considered each of the three factors the Court concludes that it is appropriate to **GRANT** in part and **DENY** in part Defendants' motion to stay.

## DISCUSSION

### I.    *Whether Defendants have Made a Strong Showing That Plaintiff's Claims are Unmeritorious*

The Amended Complaint asserts six causes of action, each under a different legal framework. (*See* ECF No. 22.) In their pre-motion letter to dismiss, Defendants argue that Plaintiff fails to state claim under—*i.e.*, fails to plead the requisite elements of—any of these causes of action. (ECF No. 25.) For purposes of the present motion to stay discovery, however, the Court need not address all six causes of action, because the case will proceed to discovery if Plaintiff successfully pleads even one. As discussed below, it seems likely that the Amended Complaint may survive at least with respect to the implied covenant claim. Accordingly, the first factor—likelihood of success on the merits—weighs against staying discovery.

Plaintiff argues that Defendants had an obligation to not use Plaintiff's proprietary information "for any purpose or activity except as expressly authorized or contemplated by the agreement." (Am. Compl. ¶ 72–73.) The way Plaintiff understands the Vendor Agreement and the MFT Program Agreement, Defendants were authorized to use the information and fees provided by Plaintiff to optimize Defendants' search engine to increase Plaintiff's sales—not to develop their own competing product. (*See id.*) Additionally, Plaintiff points to a provision in the contract which prohibits Plaintiff from selling to end-users directly, effectively binding Plaintiff to an exclusivity contract. (*Id.* at ¶ 75.)

"In addition to the express terms of a contract, New York law implies in every contract a covenant of good faith and fair dealing 'pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Dorset Indus., Inc v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 405

7

(E.D.N.Y. 2012) (Spatt, J.) (quoting *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir. 2006)) (internal citations omitted).

> In assessing the existence of an implied covenant, [t]he boundaries set by the duty of good faith are generally defined by the parties' intent and reasonable expectations in entering the contract. The implied covenant of good faith encompasses any promises which a reasonable person in the position of the promisee would be justified in understanding were included in the agreement. However, it is well-settled that the covenant can only impose an obligation consistent with other mutually agreed upon terms in the contract. It does not add to the contract a substantive provision not included by the parties.

*Id.* at 406 (internal citations and quotation marks omitted).

Given both the context and the express terms of the parties' agreement, the Court finds that a reasonable person in Plaintiff's position may well have believed the agreement to encompass a promise by Defendants to not use Plaintiff's proprietary information to copy Plaintiff's products and then market the knockoffs at a lower price on the very website used to market Plaintiff's products—especially considering that Plaintiff was contractually prohibited from selling to end-users directly.

This case is strikingly similar to *Dorset*. There, the parties entered into an agreement to create a "check-out program" for retailers to use near cash registers to display items for a rent fee payable to Dorset, the plaintiff. *Dorset*, 893 F. Supp. 2d at 399. As part of that agreement, Unified, the defendant, was also supposed to promote an extension program to participants so they could continue using the "checkout program" directly with Dorset after the parties' exclusivity agreement terminated. *Id.* at 400. In the end, however, Unified contrived to solicit customers directly for its own benefit. *Id.* According to Dorset, "Unified misappropriated Dorset's confidential information to create a competing checkout program that it marketed to its member grocers, instead of the Dorset Program[.]" *Id.* at 401. Judge Spatt found these facts, accepted as true at the pleading stage, sufficient to constitute a breach of the implied covenant of

8

good faith. *Id.* at 409. "[W]hile the [p]laintiff assumed the risk that the retailers would enter into separate contracts with its competitors, it did not assume the risk that the [d]efendant would 'for its own self-interested reasons' offer a competing program directly to the retailers." *Id.* (quoting *Gunthel v. Deutsche Bank AG*, 32 A.D.3d 335, 336 (1st Dep't 2006)).

Another illustrative case on point is *Int'l Elecs., Inc. v. Media Syndication Glob.*, No. 02-CV-4274, 2002 WL 1897661 (S.D.N.Y. Aug. 17, 2002), where the parties entered an exclusive agreement for the defendant to distribute plaintiff's "call waiting" service. However, according to plaintiff, defendant "deliberately dragged its heels in developing the market for [the] plaintiff's product while covertly arranging . . . to have a cheap knock-off made in China which it then introduced in competition with [the] plaintiff's product, essentially eviscerating [the] plaintiff's business." *Id.* at *1 The court found these facts more than sufficient, at the pleading stage, to state a claim for breach of the implied covenant:

> The complaint quite plainly alleges that [the defendant] contracted for exclusive distribution rights on [the] plaintiff's product through certain channels and then proceeded to stall in order [to] deprive [the] plaintiff of the benefits of that agreement by introducing and promoting its knock-off product. It is difficult to imagine a clearer violation of the implied covenant of good faith and fair dealing[.]

*Id.*

Similarly, while Plaintiff, like any manufacturer, assumed the risk that customers would choose to buy from a different manufacturer, it did not assume that Defendants would use information acquired through the parties' business relationship to develop their own competing product and then sell it on the same website at a cheaper price, essentially eliminating all business for Plaintiff.

Accordingly, accepting Plaintiff's allegations as true and drawing all inferences in favor of Plaintiff, Plaintiff has reasonably and plausibly pled that Defendants breached the implied

covenant of good faith and fair dealing, because, "[u]nder the law, the Plaintiff was entitled to expect that the Defendant[s] would not act to destroy its rights to enjoy the fruits of its contract." *Dorset*, 893 F. Supp. 2d at 410.  Since Plaintiff has presented at least one potentially meritorious claim, the Court finds that the first factor weighs in favor of denying the stay.  While Plaintiff has pled another five claims, all the claims span from the same set of events, and thus, discovery for all claims is bound to overlap.  Even if these other claims are ultimately dismissed, Defendants will not have been prejudiced by producing unnecessary discovery, because they need to produce discovery on Plaintiff's implied covenant claim regardless.  Accordingly, the first factor weighs against staying discovery.

## II. *Breadth of Discovery and the Corresponding Burdens*

Defendants express concern that, given the number of claims in the Amended Complaint, discovery "will necessarily require broad document collection, review, ESI negotiations, confidentiality disputes, and likely third-party discovery" as well as "numerous custodians across multiple business functions[.]"  (ECF No. 26 at 5–6.)

"'Normal discovery in a limited matter does not alone rise to the level of good cause,' so a party seeking a stay must proffer specific reasons why discovery is likely to be unusually complex." *Combs v. Burgess*, No. 225-CV-0650 (JPC), 2026 WL 205571, at *2 (S.D.N.Y. Jan. 27, 2026) (quoting *Guiffre v. Maxwell*, No. 15-CV-7433 (RWS), 2016 WL 254932, at *2 (S.D.N.Y. Jan. 20, 2016), then citing *Mirra v. Jordan*, No. 15-CV-4100 (AT) (KNF), 2016 WL 889559 (S.D.N.Y. Mar. 1, 2016)).  "Courts frequently decline" to stay discovery "'where defendants fail to show why discovery would be burdensome'" or where, *inter alia*, issuing a stay would not "meaningfully reduce discovery burdens." *Brawer v. Egan-Jones Rating Company*, 348 F.R.D. 182, 186 (S.D.N.Y. 2025) (quoting *Bennett v. Cuomo*, No. 22-CV-7846 (VSB), 2023 WL 2021560 (S.D.N.Y. Feb. 15, 2023)).

When discovery involves one plaintiff with one claim against one defendant, courts more often find that discovery is not likely to reach such a breadth in which good cause to issue a stay exists. *See Guiffre v. Maxwell*, No. 15-CV-7433 (RWS), 2016 WL 254932, *2 (S.D.N.Y. Jan 20, 2016) ("[T]his case involves a single claim against a single defendant, related to an ongoing series of events in which Defendant was alleged to be personally and intimately involved. . . . Discovery in this case is accordingly tailored to that single claim and the associated events. It does not reach such a wide-breadth that good cause for a stay exists."); *see also Choudhury v. NYC Health & Hosps. Corp.*, No. 25-CV-5240 (PAE), 2025 WL 2977837, at *4 (S.D.N.Y. Oct. 22, 2025) (finding minimal burden where there was "one plaintiff" whose "claims turn on common facts" and "there is no reason to expect discovery to implicate complex operations or concepts, foreign language documents, or overseas witnesses or records"). Conversely, when there are multiple defendants or plaintiffs with multiple, possibly complex, claims, the burden weighs in favor of issuing a stay. *See, e.g.*, *Spinelli v. National Football League*, No. 13-CV-7398 (RWS), 2025 WL 7302266, at *2 (S.D.N.Y. Nov. 17, 2015) (staying discovery on account of burden where plaintiff asserted "complex copyright and antitrust claims" against "40 defendants" such that the defendants estimated "that the cost of responding would stretch into the hundreds of thousands of dollars").

Here, although Plaintiff asserts multiple complex claims, it does not necessarily follow that discovery will be unusually burdensome. Defendants assert that discovery is bound to be burdensome by presenting a list of things that Plaintiff has stated it plans to ask for (ECF No. 26 at 5–6); however, they have not specifically pointed out any requests as unusually complex that deviate from the normal burdens of discovery. Additionally, even though the parties' relationship spans about a decade, the alleged events that have brought forth this suit only go

11

back to 2021, when the parties agreed to optimize Defendants' website, and 2023, when the training sessions from which the alleged private information was mis-acquired took place.

More to the point, although Plaintiff asserts six independent causes of action, they are all variations on a single theme, arising from a common nucleus of facts.  As noted above, discovery for most of Plaintiff's claims—implied covenant, fraud, unjust enrichment, and unfair competition—will be overlapping.  Due to the natural limitation of years and events, and to the overlapping nature of Plaintiff's claims, discovery should be naturally mitigated.  The only discovery that seems likely to be costly and burdensome is any expert discovery in connection with Plaintiff's Lanham Act and trade secret claims.  Accordingly, so-called "paper discovery" and depositions shall proceed as to Plaintiff's implied covenant claim and related claims, but expert disclosures and discovery is stayed, and all discovery is stayed as to the Amended Complaint's second and fourth claims for relief (Lanham Act and trade secrets, respectively).

### III.   *Risk of Unfair Prejudice*

Defendants finish by stating that a stay, because of its temporary nature, will not prejudice Plaintiff as all evidence must be preserved pending a motion to dismiss, and afterward, assuming Plaintiff's claims survive the motion to dismiss, discovery will proceed as normal within the parties' agreed-on schedule without additional expense to Plaintiff or advantage to Defendants.  (ECF No. 21-1 at 8.)

Plaintiff replies that it will be prejudiced if discovery is stayed, because there is an active, ongoing harm to its business interests by the infringement of its products, which is prejudice in and of itself.  (ECF No. 24 at 7–8.)

"Mere delay in the litigation does not establish undue prejudice." *Luxury Cars of Bayside, Inc. v. BMW of North America, LLC*, 26-CV-0163 (JMA) (JMW), 2026 WL 592530, \*6

(E.D.N.Y. Mar. 3, 2026) (quoting *Wiesel v. Apple Inc.*, No. 19-CV-7261 (JMA) (JMW), 2021 WL 5038764, 1t *3 (E.D.N.Y. Oct. 29, 2021)). "Courts in this Circuit grant short stays that will be vacated upon resolution of a motion to dismiss and 'neither unnecessarily delay the action nor prejudice the plaintiffs thereby.'" *Id.* at *6 (quoting *Spencer Trask Software & Info. Servs., LLC v. Rpost Int'l Ltd.*, 206 F.R.D. 367 ( S.D.N.Y. 2002)). On the other hand, if good cause has not otherwise been shown, lack of prejudice alone does not justify a stay. *Guiffre v. Maxwell*, 15-CV-7433 (RWS), 2016 WL 254932, *2 (S.D.N.Y. Jan. 20, 2016).

Plaintiff asserts that it will face prejudice if discovery is stayed, because there is an "ongoing harm to its business interests." But Plaintiff has not explained why proceeding with discovery would ameliorate that alleged ongoing harm. Even if discovery proceeds, Plaintiff and Defendants could still face years of litigation, and all the while the "ongoing harm" would continue. As Defendants note, if the harm to Plaintiff were truly so urgent, Plaintiff could have moved for a temporary injunction, but it did not. (ECF No. 26 at 7.) Seeing as Plaintiff does not present any prejudice besides delay, this factor weighs in favor of granting the stay. However, since lack of prejudice alone is not dispositive, and in light of the other two factors weighing against a stay, the Court must deny the stay of discovery at this time.

## CONCLUSION

Based upon the foregoing, Defendants' motion to stay discovery (ECF No. 21) is **GRANTED** in part and **DENIED** in part**.** The parties shall move forward with initial disclosures, so-called "paper" discovery such as interrogatories and document demands, and fact or percipient witness depositions, limited to Plaintiff's implied covenant claim and related claims. The parties shall not, however, conduct any expert discovery, nor shall the parties conduct discovery of any kind that pertains only to Plaintiff's trade secret or Lanham Act claims.

The parties are further directed to meet and confer and file a joint proposed schedule for discovery within 10 days of the ruling on the pending motion to dismiss.

Dated: Central Islip, New York
       July 6, 2026

                                        S O   O R D E R E D:

                                        /S/ *James M. Wicks*

                                        JAMES M. WICKS
                                        United States Magistrate Judge